UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DONALD BRAYMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:19 CV 40 ACL |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Donald Braymer brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Braymer's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Braymer filed his application for benefits on June 20, 2016, claiming that he became unable to work on December 27, 2015.  (Tr. 182.)  Braymer alleged disability due to spinal

stenosis, degenerative spondylosis of the cervical and lumbar spine, foraminal narrowing, a disk bulge, and compression fractures.  (Tr. 221)   Braymer was 54 years of age at his alleged onset of disability date.  (Tr. 182.)   His application was denied initially.  (Tr. 119.)   Braymer's claim was denied by an ALJ on August 20, 2018.  (Tr. 17-25.)   On March 27, 2019, the Appeals Council denied Braymer's claim for review.  (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Braymer argues that "[r]emand is required because the ALJ's conclusion that Braymer could sustain work eight hours a day, five days a week, on a day-in, day-out basis in the competitive world of work is not supported by substantial evidence."   (Doc. 11 at p. 6.)

## II.  The ALJ's Determination

The ALJ first found that Braymer meets the insured status requirements of the Act through December 31, 2020.  (Tr. 20.)   He next found that Braymer has not engaged in substantial gainful activity since December 27, 2015.   *Id.*   In addition, the ALJ concluded that Braymer had the following severe impairments: degenerative disc disease of the spine with radiculopathy; cervical and lumbar spinal stenosis; peripheral neuropathy; and obesity.   *Id.*   The ALJ found that Braymer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 21.)

As to Braymer's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit for 6 hours in a typical 8-hour workday; and he can use foot controls with his left and/or right foot frequently. In addition, he can frequently reach overhead to the left or right; he can frequently reach in all other directions; he can frequently

> handle items using the right and/or left hand; and he can frequently feel using the upper extremities, bilaterally. However, he can stand for only 4 hours in an 8-hour workday; he can walk for only 3 hours in an 8-hour workday; he can push and/or pull within the noted exertional levels only occasionally, bilaterally; he can only occasionally balance, stoop, kneel, crouch, and climb ramps, stairs, ladders, ropes and/or scaffolds; and he can never crawl. He can also only occasionally work with moving mechanical parts or operate a motor vehicle; he can only occasionally work in humidity, wetness, dust, odors, fumes and pulmonary irritants; he can work in only a moderate level of noise (such as found in a typical office setting); he can never work in extreme cold, extreme heat or vibration; and he can never work at unprotected heights.

(Tr. 21-22.)

The ALJ found that Braymer was capable of performing past relevant work as a Parts Manager. (Tr. 24.) The ALJ therefore concluded that Braymer was not under a disability, as defined in the Social Security Act, from December 27, 2015, through the date of the decision. (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 17, 2016, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III. Applicable Law

**III.A. Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability

remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.  Discussion

In his single claim, Braymer argues that the ALJ's RFC determination is not supported by substantial evidence.   Specifically, Braymer contends that the ALJ erred in discrediting the opinion of treating physician Gregory Sensenich, D.O., and relying on the opinion of consultative nurse practitioner Latonia Howard, FNP-BC.

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (2001).  "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).   An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   There is no requirement, however, that an RFC finding be supported by a specific medical opinion.  *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011) (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").   Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Cox*, 495 F.3d at 619-20.

In determining Braymer's RFC, the ALJ first discussed the medical evidence of record. He acknowledged Braymer's history of "chronic, worsening neck and low back pain with documented multilevel degenerative disc disease of the cervical, thoracic and lumbosacral spine," as well as "mild to moderate cervical spinal stenosis, lumbosacral facet hypertrophy and bulging thoracic and lumbar disc with lumbar radiculopathy and foraminal narrowing." (Tr. 22.)  The ALJ stated Braymer has attended physical therapy and pain clinic rehabilitation; has received numerous injections as well as having been prescribed medications and use of a TENS unit, with some resulting benefit but not complete symptomatic relief.  The ALJ pointed out that, although Braymer has described his pain as constant, he has typically rated it as "5" at most, on a 10-point scale   On examinations, Braymer's reflexes, sensation, strength, gait, and station have typically been normal, with negative electromyography (EMG).  The ALJ noted that Braymer's symptoms have increased and his functionality has decreased somewhat over time. For example, Braymer demonstrated a steady but slow and wise-based gait, some sensory loss in the lower extremities, and some decreased strength of the cervical and lumbar spine in recent examinations.  (Tr. 22, 458, 467, 541, 558.)  The ALJ noted that, although EMG testing was normal, Braymer has been diagnosed with peripheral neuropathy.  (Tr. 22-23, 615.)

With regard to the medical opinion evidence, the ALJ first addressed the opinions provided by consultative examiner Ms. Howard.  (Tr. 23.)  Ms. Howard, a nurse practitioner, examined Braymer on February 24, 2018, after the administrative hearing.  (Tr. 538.)  Braymer reported a daily dull, achy, sharp pain that occurs with activity.  *Id.*  He indicated that his pain was a "2" out of 10 in intensity on the date of the examination, although it was typically a "5" out of 10.  *Id.*  Upon examination, Braymer was in no acute distress, had a "steady, slow, wide gait," did not use an assistive device for ambulation, had no palpable muscle spasms, normal

muscle bulk and tone, negative straight leg raise, decreased sensory examination in the bilateral lower extremities, was able to lift and carry personal belongings, was able to squat and then rise with moderate difficulty, was able to rise from a sitting position with assistance, had some difficulty getting up and down from the exam table, was unable to walk on heels and toes, tandem walking was normal, and was able to stand but not hop on one foot bilaterally.  (Tr. 540.)  Ms. Howard did not feel safe asking Braymer to walk on his tiptoes or heels.  (Tr. 541.)  She diagnosed Braymer with spinal stenosis and degenerative disk disease.  *Id.*

Ms. Howard completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  (Tr. 544-49.)  She expressed the opinion that Braymer could occasionally lift and carry up to twenty pounds; sit for one hour at a time and could sit a total of six hours in an eight-hour workday; stand for a total of four hours in an eight-hour workday; walk a total of three hours in an eight-hour workday; occasionally push and pull with the hands bilaterally; frequently reach, handle, and finger with the hands bilaterally; frequently operate foot controls bilaterally; occasionally climb stairs, balance, stoop, kneel, and crouch; could never crawl; could occasionally be exposed to moving mechanical parts, operate a motor vehicle, and be exposed to humidity and dust; and could never be exposed to unprotected heights, extreme temperatures, or vibration.  (Tr. 544-48.)

The ALJ indicated that he was assigning "great weight" to Ms. Howard's opinions.  (Tr. 23.)  He explained that Ms. Howard was a qualified professional "who conducted a thorough examination and submitted a detailed report of her findings and associated opinions that is current, supported by and not inconsistent with the preponderance of the evidence as a whole." *Id.*

The ALJ next addressed the opinions of treating primary care physician Dr. Sensenich. On October 20, 2016, Dr. Sensenich completed a Medical Source Statement-Physical.  (Tr. 577-79.)  He indicated that Braymer had constant pain "at 2/10."  (Tr. 577.)  Dr. Sensenich expressed the opinion that Braymer could frequently lift or carry up to ten pounds and could rarely lift or carry twenty pounds; sit for twenty minutes at a time and sit a total of two hours in an eight-hour workday; stand for thirty minutes at a time and stand a total of two hours in an eight-hour workday; occasionally balance, handle, finger, and feel; could rarely stoop, crouch, crawl, climb, and reach; and could never twist.  (Tr. 578.)  Braymer would need to shift positions at will from sitting, standing, or walking, and would need to take unscheduled breaks during the workday.  (Tr. 578-579.)  Dr. Sensenich found that Braymer would be off task twenty percent of the workday, was capable of only low stress work, and would miss work more than four days a month due to his impairments.  (Tr. 579.)  Additionally, in a treatment note dated June 5, 2018, Dr. Sensenich stated that Braymer "is unable to be gainfully employed." (Tr. 559.)

The ALJ indicated that he was assigning "little weight" to Dr. Sensenich's opinions because they indicated "limitations that are excessive when considering the record and specific findings as a whole, as previously discussed and referenced."  (Tr. 23.)  With regard to Dr. Sensenich's June 2018 statement, the ALJ noted that opinions regarding a claimant's disability status was an administration issue reserved to the Commissioner and therefor accorded it no weight.  (Tr. 23-24.)

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians."  *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)).  The opinion of a

treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise,* 641 F.3d at 927. Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The undersigned finds that the ALJ properly weighed the opinion evidence in determining Braymer's RFC. With regard to Dr. Sensenich's opinions, the ALJ found that the limitations were not supported by the medical evidence. Dr. Sensenich's treatment notes in the record begin in October 2014. At that time, Braymer saw Dr. Sensenich for various complaints, including osteoarthritis. (Tr. 451.) Dr. Sensenich prescribed pain medication for Braymer's osteoarthritis and continued to see Braymer for wellness exams and follow-ups. (Tr. 451-54.) On June 3, 2016, Dr. Sensenich indicated that Braymer had been seen at Mayo Clinic for

cervical and lumbar disc disease, and that it was recommended he start Neurontin.[1]  (Tr. 455.) Braymer was doing well other than having "cervical and lumbar discomfort with radiculopathy." *Id.*  At a follow-up in October 2016, Braymer reported pain that he rated as a 4 on average, which he indicated moderately affected his activities of daily living, especially with exercise and walking.  (Tr. 612.)  On examination, Dr. Sensenich noted decreased range of motion of the lumbar spine and tenderness, but normal reflexes and sensation.  (Tr. 613.)  On October 20, 2016—the date Dr. Sensenich authored his Medical Source Statement—Braymer reported an average pain level of 2.  (Tr. 609.)  On examination, Dr. Sensenich noted tenderness and decreased range of motion of the cervical, thoracic, and lumbar spine.  (Tr. 610.)  In December 2016, Dr. Sensenich noted Braymer had a normal gait and station and normal range of motion, although he noted tenderness of the cervical and lumbar regions.  (Tr. 604, 607.)  Braymer's gait and station were normal and he had normal range of motion of the spine in March 2017. (Tr. 599.)  Tenderness of the lumbar region was noted in April 2017, but Braymer had normal gait and range of motion.  (Tr. 595.)  No musculoskeletal or neurological abnormalities were noted in July 2017.  (Tr. 592.)  In October 2017, Braymer presented with complaints of gradual weight gain.  (Tr. 588.)  On examination, Dr. Sensenich noted only tenderness of the lumbar region.  (Tr. 589.)  In November 2017, Braymer presented for a follow-up weight loss consultation.  (Tr. 585.)  On examination, Dr. Sensenich noted tenderness of the cervical and lumbar regions, but normal range of motion and gait.  (Tr. 583, 586.)  On a December 2017 follow-up, Braymer reported that he had been exercising.  (Tr. 582.)  Dr. Sensenich's examination findings were unchanged.  (Tr. 583.)  Dr. Sensenich noted only lumbar tenderness

---

[1]Neurontin is indicated for the treatment of nerve pain.  *See* WebMD, http://www.webmd.com/drugs (last visited July 10, 2020).

in January and February of 2018.  (Tr. 570, 574.)  In March 2018, Braymer was tender in the cervical and lumbar regions.  (Tr. 567.)  He had no tenderness or any other musculoskeletal or neurologic abnormalities in April 2018.  (Tr. 562.)  Braymer presented with complaints of lumbar disc symptoms on June 5, 2018.  (Tr. 557.)  On examination, Dr. Sensenich noted tenderness in the cervical and lumbar regions, with paravertebral fullness bilaterally, and decreased range of motion and strength of the cervical and lumbar spine.  (Tr. 558.)  Braymer's sensation and reflexes were intact.  *Id.*

      Dr. Sensenich's own treatment notes do not support his opinions of serious limitations.  At the time Dr. Sensenich authored his Medical Source Statement in October 2016, he had seen Braymer only sporadically and provided conservative treatment.  In June 2016, he noted that Braymer was "doing well," other than experiencing some cervical and lumbar "discomfort."  (Tr. 455.)  On examinations in October 2016, Dr. Sensenich noted some tenderness and decreased range of motion of the spine, but normal gait and neurologic examination.  Significantly, Braymer reported an average pain level of only 2 on the date Dr. Sensenich provided his opinions.  The ALJ also considered that other medical evidence in the record did not support Dr. Sensenich's opinions.  For example, in November 2016—one month after Dr. Sensenich authored his opinion—Braymer reported to another physician that he was "still quite active on his farm, but tries to avoid any type of lifting."  (Tr. 460, 23.)  Braymer underwent EMG testing in May 2016, which was normal.  (Tr. 435, 23.)

      The limitations found by Dr. Sensenich, such as the ability to sit for only twenty minutes at a time and two hours total, need for frequent breaks during the workday due to pain, and need to miss more than four days of work a month, are not supported by the medical evidence of record.  It is also notable that Dr. Sensenich's opinion was provided in a checklist form with

little elaboration. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (concluding the Commissioner "properly discounted" a treating physician's opinion that "consist [ed] of three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration"). Dr. Sensenich's later statement that Braymer "is unable to be gainfully employed," is not supported by his own records, which continued to show only mild findings on examination. Further, as the ALJ pointed out, an opinion that a claimant cannot work is a determination reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d). Thus, the ALJ provided "good reasons" for assigning little weight to Dr. Sensenich's opinions.

Braymer next contends that the ALJ erred in according great weight to Ms. Howard's opinion because Ms. Howard is a non-acceptable medical source and examined Braymer on only one occasion.

Ms. Howard's opinions must be evaluated as information provided by an "other" medical source. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). "Other" sources are medical sources who are not "acceptable" medical sources and include nurse practitioners, physician assistants, licensed clinical workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d)(1).[2] Opinions from "other" medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the record. *Sloan*, 499 F.3d at 888-89. In general, when weighing the opinion of an "other" medical source, an ALJ should consider: the length of time and frequency of Plaintiff's visits with the source; the consistency of the source's opinion with other evidence;

---

[2]Under current regulations, effective March 27, 2017, medical opinions from all medical sources are treated the same; "[a] medical opinion is a statement from a medical source about what you can still do despite your impairments." *See* 20 C.F.R. § 404.1513(a)(2) (effective Mar. 27, 2017). Because Braymer's claim was filed in June 2016, the old regulations apply.

the evidence and explanations supporting the source's opinion; the source's specialty; and any other factors that tend to support or refute the opinion.  *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006); 20 C.F.R. § 404.1527.   Information from these other sources cannot establish the existence of a medically determinable impairment but may provide evidence to show the severity of impairments and how they affect Plaintiff's ability to work.  *Sloan*, 499 F.3d at 888.

Following the administrative hearing, the ALJ "determined a consultative examination was indicated to clarify the medical findings and degree of impairment severity."  (Tr. 17.) Braymer presented to Ms. Howard for a consultative examination upon the referral of the ALJ. Braymer reported at the time of his examination "his pain intensity is 2/10, although he notes that it typically is 5/10."  (Tr. 538.)  Upon examination, Ms. Howard noted the following abnormalities:  Braymer had a "steady, slow, wide gait," decreased sensory examination in the bilateral lower extremities, reduced range of motion in the lumbar spine, and severe pain to palpation in the L5 area.  (Tr. 540-41, 543.)  Despite these findings, Ms. Howard also noted that Braymer did not use an assistive device for ambulation, had no palpable muscle spasms, normal muscle bulk and tone, negative straight leg raise, was able to lift and carry personal belongings, was able to squat and then rise with moderate difficulty, was able to rise from a sitting position with assistance, and was able to stand but not hop on one foot bilaterally.  (Tr. 540.)  Based on her findings on examination, Ms. Howard expressed the opinion that Braymer could perform a limited range of light work consistent with the ALJ's RFC determination.

The ALJ properly evaluated and weighed Ms. Howard's opinions.  Although Ms. Howard was a consulting nurse practitioner, her opinions were supported by her examination findings, her examination was the most recent, and her opinion was specifically requested by the

ALJ to assist with determining the severity of Braymer's condition. Ms. Howard's opinions are consistent with the other evidence of record, such as Braymer's reports of only a mild level of pain and mild objective findings on examination consisting of occasional reduced range of motion and tenderness of the spine.

The ALJ's RFC determination is supported by substantial evidence on the record as a whole. It is supported by the findings on examination of Dr. Sensenich and Ms. Howard, the opinions of Ms. Howard, Braymer's self reports of only a mild degree of pain, and Braymer's statement that he was able to work on his farm with lifting restrictions during the relevant period. Braymer points to evidence in the record he contends supports more limitations than those found by the ALJ. For example, he cites examination findings of limited range of motion and tenderness of the spine; and the pain relief modalities he received including medications, epidural injections, a TENS unit, and physical therapy. The ALJ, however, cited all of this evidence and considered it in determining Braymer's RFC. He acknowledged that Braymer experienced pain and limitations from his musculoskeletal impairments, but concluded that he nonetheless retained the capacity to perform a limited range of light work.

An ALJ's decision is not to be disturbed " 'so long as the...decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although Braymer articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising

that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination)

      Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

                                                                         **/s/** Abbie Crites-Leoni
                                                                          ABBIE CRITES-LEONI
                                                                          UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2020.